[Cite as *State v. McClendon*, 2016-Ohio-2630.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103202**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARRELL MCCLENDON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590266-A

**BEFORE:** E.A. Gallagher, J., Keough, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 21, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY: John T. Martin
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Holly Welsh
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Darrell McClendon appeals his conviction after he pled guilty to one count of trafficking in persons. McClendon claims that, based on statements he made during the plea hearing regarding his mental health, the trial court erred in accepting his guilty plea under Crim.R. 11(C) and that his guilty plea should, therefore, be vacated. For the reasons that follow, we affirm McClendon's conviction.

{¶2} On October 14, 2014, a Cuyahoga County Grand Jury indicted McClendon and two codefendants on 18 counts: trafficking in persons (Counts 1 through 15), promoting prostitution (Count 16), drug possession in violation of R.C. 2925.11(A) (Count 17) and possessing criminal tools in violation of (Count 18). The charges arose of out McClendon's operation of a prostitution ring in which he allegedly preyed on women who were addicted to heroin, increased their heroin dosage and then forced them to engage in prostitution in exchange for heroin to feed their addictions. Each of the trafficking in persons counts included a repeat violent offender specification and Count 18 included a forfeiture specification. McClendon entered a plea of not guilty to each of the charges and trial was set for December 8, 2014.

{¶3} On the morning of trial, the trial court inquired whether a plea agreement had been reached. Defense counsel responded:

> [T]here's always the possibility of a plea, but Mr. McClendon has a difficult case and there is a severe penalty. I have explained everything that I possibly can to him about what witnesses the State will put on, the elements of the various offenses, and the possible ways to approach this case. And I have also explained the options, jury trial versus jury waiver, and the

potential penalties here. * * * I believe that Mr. McClendon will have to speak for himself, but the last thing he's indicated to me is that he wants to proceed to trial.

{¶4} Upon further inquiry by the trial court McClendon indicated: "[W]ith the plea bargain, I told my attorney that I'll take five years, but I don't know if you guys want to do that." The state indicated that it was prepared to proceed to trial and summarized the evidence it planned to present against McClendon.

{¶5} After hearing the evidence the state planned to present at trial, the trial court addressed McClendon's statement that he would be willing to enter a guilty plea if he could be guaranteed a five-year sentence:

> THE COURT: You had mentioned five years, Mr. McClendon. It's not my practice. It might be some other judges' practice to promise or hint at a term of sentence if a defendant were to enter into a plea. I've never done that.
>
> So if you wish to accept responsibility and enter into a plea, you will know the range of sentence. But that's all any defendant knows in Courtroom 17-D when they enter into a plea agreement.
>
> Do you have any other questions?
>
> THE DEFENDANT: No.

{¶6} Plea discussions continued. Later that day, the parties again appeared before the trial judge and advised him that a plea agreement had been reached. McClendon agreed to plea to an amended Count 1, trafficking in persons that included all seven victims and to forfeit the property listed in the forfeiture specification in Count 18. In exchange, the state agreed to dismiss the repeat violent offender specification in Count 1 and all other counts. The trial court confirmed with defense counsel that the state had

accurately described the plea agreement and that there was a factual basis for McClendon to plead guilty to the charge.

{¶7} The trial court then asked McClendon whether he understood the terms of the plea agreement. McClendon responded, "Yes, I kind of do," but asked the trial judge a question regarding the Jane Does referenced in Count 1 as amended. The trial judge explained the amendment of Count 1 and the effect of the amendment of that count and confirmed with McClendon that his response had answered McClendon's question.

{¶8} The trial judge then proceeded with the plea colloquy. He asked McClendon a number of preliminary questions and confirmed that no threats or promises had been made to induce McClendon to enter his plea and that he was satisfied with his counsel. McClendon disclosed that he could read but had dropped out of school in the seventh grade and that he was taking several psychotropic medications. The trial court engaged McClendon in a lengthy dialogue regarding the purpose for which he was taking the medications, his mental health diagnoses, the length of time he had been taking the medications, changes in his medication and the effect of the medications. After concluding that McClendon was sufficiently lucid to enter a guilty plea and confirming with McClendon that he still wished to proceed with the plea, the trial court continued with the plea colloquy.

{¶9} The trial court advised McClendon of his constitutional rights and confirmed that McClendon understood the rights he would be giving up by entering a guilty plea. The trial court outlined the potential penalties McClendon could face by pleading guilty,

explained to McClendon that his guilty plea would be considered a violation of his postrelease control in a prior case and explained the potential consequences of violating postrelease control. McClendon indicated that he understood the potential penalties he faced as a result of his plea and confirmed that no promises had been made to him with respect to what sentence would be imposed in exchange for his plea.

{¶10} McClendon then pled guilty to the amended Count 1. The trial court found that McClendon had entered his plea knowingly, intelligently and voluntarily and "with very clear lucidity" and accepted his guilty plea. In accordance with the plea agreement, the remaining counts against him were nolled.

{¶11} On December 10, 2014, the trial court sentenced McClendon to 15 years in prison and five years of mandatory postrelease control and he was classified as a Tier II sex offender/child victim offender. McClendon sought and was granted leave to file a delayed appeal of his conviction in which he raised the following assignment of error for review:

> The trial court erred when it accepted Mr. McClendon's guilty plea despite evidence that Mr. McClendon was not mentally capable of entering a plea at that time.

**Law and Analysis**

{¶12} McClendon claims that the trial court erred in accepting his guilty plea under Crim.R. 11(C) in light of "evidence" that he was "not mentally capable of entering a plea at that time." McClendon contends that because he had advised the trial court, prior to entering his plea, that (1) he had been diagnosed with schizophrenia, (2) was on a

"recently changed regimen of psychotropic medication," (3) "professed to hearing voices" earlier that day and (4) informed the trial court that he was not "clearheaded," the trial court "should not have gone through with the plea colloquy" and, in doing so, violated McClendon's Fifth and Fourteenth Amendment rights to due process and his Sixth Amendment "right to trial." McClendon further contends that his prior schizophrenia diagnosis in conjunction with the fact that he had not been examined by the court psychiatric clinic should have led the trial court to "engage a mental health professional in the process" prior to accepting his plea rather than make a "lay diagnosis."

{¶13} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C)(2) governs the acceptance of guilty pleas in felony cases. It provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial,

to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶14}** The underlying purpose Crim.R. 11(C) is to convey information to the defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). In determining whether the trial court has satisfied its duties under Crim.R. 11(C)(2), reviewing courts distinguish between constitutional rights and nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 474, ¶ 14-21. The trial court must strictly comply with the requirements of Crim.R. 11(C)(2)(c) relating to the waiver of constitutional rights. *Id.* at ¶ 18. As to the nonconstitutional aspects of Crim.R. 11(C)(2), "substantial compliance" is sufficient. *Id.* at ¶ 14; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), syllabus. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Nero* at 108. Even if a trial court makes an error in attempting to comply with Crim.R. 11(C)(2)(a), "'if it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance.'" *State v. Thomas*, 8th Dist. Cuyahoga No. 94788, 2011-Ohio-214, ¶ 13, quoting *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995). Furthermore even if the trial court does not substantially comply, a defendant must generally show prejudice before a plea will be vacated for an error involving Crim.R. 11(C)(2) when nonconstitutional aspects of

the colloquy are at issue. *Veney* at ¶ 17; *see also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32 (unless the trial court completely failed to comply with a requirement of Crim.R. 11(C)(2) relating to a nonconstitutional aspect of the plea colloquy, the defendant must demonstrate a prejudicial effect). To demonstrate prejudice in this context, the defendant must show that the plea would not have otherwise been entered. *Veney* at ¶ 15; *Clark* at ¶ 32.

{¶15} McClendon has not alleged a specific violation of Crim.R. 11(C)(2). Instead, McClendon contends that, given the statements he made regarding his mental health during the plea colloquy, the trial court could not properly conclude that his plea was entered knowingly, intelligently and voluntarily without first ordering a mental health evaluation to ensure he had the mental capacity to enter a plea.

{¶16} The mere fact that a defendant suffered from a mental illness or was taking psychotropic medication under medical supervision when he entered a guilty plea is not an indication that his plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting the defendant's guilty plea. *See, e.g., State v. Robinson,* 8th Dist. Cuyahoga No. 89136, 2007-Ohio-6831, ¶ 18; *State v. Harney,* 8th Dist. Cuyahoga No. 71001, 1997 Ohio App. LEXIS 1768, *4 (May 1, 1997); *State v. Bowen*, 8th Dist. Cuyahoga Nos. 70054 and 70055, 1996 Ohio App. LEXIS 5612, *9 (Dec. 12, 1996); *State v. McDowell*, 8th Dist. Cuyahoga No. 70799, 1997 Ohio App. LEXIS 113, *4 (Jan. 16, 1997); *see also State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a

defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial.").

{¶17} Furthermore, a trial court "is not required to order an evaluation of a defendant's mental health every time the issue is raised." *Bowen* at *5, 7, citing *State v. Bailey*, 90 Ohio App.3d 58, 67, 627 N.E.2d 1078 (11th Dist.1992). Even a person suffering from mental illness or who takes psychotropic drugs may be able to understand the charges against him and assist in his defense. *Robinson* at ¶ 18. Defendants are not presumed incompetent solely because they are receiving or have received treatment for mental illness. R.C. 2945.37(F); *see also State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986) ("A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting counsel."). A defendant is presumed competent to stand trial unless it is established that he is unable to understand the nature and objective of the proceedings or cannot assist in his defense. *See* R.C. 2945.37(G); *see also Robinson,* 2007-Ohio-6831, at ¶ 20, citing *State v. Swift*, 86 Ohio App.3d 407, 411, 621 N.E.2d 513 (11th Dist.1993). "Therefore, a defendant's * * * mental instability does not establish incompetence for the purpose of negating a plea, which was otherwise voluntarily, knowingly, and intelligently made." *State v. Prettyman,* 8th Dist. Cuyahoga No. 79291, 2002 Ohio App. LEXIS 1112, *4-5 (Mar. 14, 2002), citing *Swift* at 411.

{¶18} In this case, there is no indication that anyone raised an issue as to McClendon's competence to enter a guilty plea or requested a mental health evaluation at,

or prior to, the plea hearing. A trial court may determine that a defendant understands his plea "by considering the surrounding circumstances such as the dialogue between the court and the defendant and the defendant's demeanor." *McDowell* at *4; *Bowen* at *9; *see also State v. Davis*, 4th Dist. Vinton No. 98CA523, 1999 Ohio App. LEXIS 1851, *8-9 (Apr. 20, 1999).

{¶19} In considering whether a plea was knowingly, intelligently and voluntarily entered, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock,* 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6 ("An appellate court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11(C).").

{¶20} In support of his argument that the trial court erred in accepting his guilty plea, McClendon points to the following exchange during the plea hearing:

THE COURT: * * * [A]re you on any medication today?

THE DEFENDANT: Yes.

THE COURT: What are you taking?

THE DEFENDANT: I take Haldol, Cogentin and Effexor.

THE COURT: And what do you take that for?

THE DEFENDANT: I hear voices and stuff.

THE COURT: Okay. And are you hearing any voices today?

THE DEFENDANT: I am, yes. Yeah.

THE COURT: You're hearing voices right now?

THE DEFENDANT: Yeah, I hear voices right now.

THE COURT: Of people who are not present in this room?

THE DEFENDANT: Exactly, right.

THE COURT: And how long have you been hearing voices?

THE DEFENDANT: Well, I'd say about seven years.

THE COURT: And does this medication have any effect on the voices?

THE DEFENDANT: Yeah, it takes a while to kick in, my meds.

* * *

THE COURT: [Y]ou have been on medication two months?

THE DEFENDANT: Yes.

THE COURT: And you're still hearing voices?

THE DEFENDANT: Yeah.

* * *

THE COURT: Okay. You seem very clearheaded today. Do you feel clearheaded?

THE DEFENDANT: I'm okay.

THE COURT: You're okay or do you hear — I mean, I need to know.

THE DEFENDANT: I don't want to p*** nobody off in this room, you know. I just want to get my time and go, Your Honor. Just —

THE COURT: Well, nobody is going to get mad if you have a mental health condition and it's not being treated. But we need to

determine — I can't take your plea if you're not clearheaded today. And you asked me about Jane Doe No. 2 when we started here.

THE DEFENDANT: Right.

THE COURT: And that shows me that you're with it. * * * We're trying to determine whether you're clearheaded or not.

THE DEFENDANT: Well, I'm not clearheaded right now, no.
THE COURT: You're not clearheaded?

THE DEFENDANT: No.

THE COURT: Okay. When was the last time you felt you were clearheaded?

THE DEFENDANT: Pretty much never.

{¶21} Upon further questioning by the trial court, McClendon clarified that he was not actually hearing voices during the plea colloquy, only that he had heard voices earlier:

THE COURT: * * * So these voices that you're hearing, what are they telling you?

* * *

THE DEFENDANT: I'm not hearing them right this second.

THE COURT: When is the last time you heard one?

THE DEFENDANT: When I walked through that door a few moments ago.

THE COURT: And what did that voice tell you, anything specific?

THE DEFENDANT: Yeah, like I'm about to be railroaded.

THE COURT: Are the voices always clear like that, or sometimes do they just make noise?

THE DEFENDANT: Both.

{¶22} McClendon's statements at the plea hearing do not demonstrate that he lacks the requisite mental capacity to enter into a guilty plea nor does it suggest that the trial court should not have accepted his guilty plea. The trial court engaged in an extensive dialogue with McClendon during the plea colloquy regarding his diagnosis of schizophrenia six years ago, the medication he was now taking, when his medication had last been changed and the perceived effectiveness of his medication. The court also inquired of McClendon's counsel whether McClendon had received a "psych referral" or whether defense counsel had any concerns regarding McClendon's competency to enter a plea. Defense counsel indicated that he had not requested a psych referral for McClendon because he had multiple in-person conversations with McClendon and "never saw a need for one." Defense counsel stated, "[I]n my opinion[,] he's very lucid." Upon further inquiry by the court, the defendant indicated that he had five prior felony cases in which he had entered guilty pleas but had never been seen by the court psychiatric clinic because "[n]obody ever offered me that." McClendon indicated that in each of those cases, he was asked whether he was clearheaded or lucid and that each time he responded that he was not but that the trial judges in each of those cases still accepted his guilty pleas.

{¶23} After reviewing the transcript of the plea hearing in its entirety, it is clear that the trial court went to great lengths to ensure that McClendon fully understood the proceedings and that he was entering his guilty plea knowingly, intelligently and voluntarily as required by Crim.R. 11(C). The record reflects that McClendon

participated in and clearly understood the proceedings, the rights he was giving up by pleading guilty, the potential penalties he could receive (including that he would be subject to a mandatory prison of 10 to 15 years) and that the trial judge was not making any deals or promises with him regarding the sentence he would receive upon entering a guilty plea. McClendon communicated with the trial court throughout the plea hearing. The trial court had an opportunity to speak with McClendon and observe his reactions to the trial court's questions. His answers were responsive and support the conclusion that he comprehended the questions directed to him by the trial court. The record does not show someone who was confused or did not understand what was going on. *Compare State v. Nickell*, 6th Dist. Wood No. WD-07-015, 2008-Ohio-1571, ¶ 18-131 (trial court erred in determining that defendant was competent and that defendant's no contest plea was not knowingly or intelligently made where the record reflected that "even with * * * repetitive coaxing and questioning" defendant was unable to "sufficiently focus on and comprehend the nature and objectives of the proceedings" and her nonresponsive answers to many of the trial court's questions indicated that she did not understand the effect of her plea).

{¶24} During the plea hearing, McClendon did not hesitate to speak up when there was something he did not understand and asked very specific questions of the trial court regarding issues related to the plea agreement and the effect of his plea, such as the inclusion of Jane Doe No. 2 in the amended count and the extent to which he could forfeit

property that did not belong to him, that made it clear that he understood the charges against him and the potential penalties.

{¶25} The record also reflects that McClendon recalled and understood what he had been told by the trial judge earlier in the proceedings. After questioning McClendon at length regarding his mental health issues, the trial court inquired:

THE COURT: Do you have any questions about this proceeding?

THE DEFENDANT: No.

THE COURT: Do you want to go through with it, this plea agreement?

* * *

THE DEFENDANT: Is it five years, ten years, what? I don't know what it is.

THE COURT: Well, you remember when you came out here this morning, right?

THE DEFENDANT: Yes.

THE COURT: And what did I tell you?

THE DEFENDANT: Nothing is promised.

THE COURT: Exactly. I don't make promises.

THE DEFENDANT: I see.

THE COURT: Okay. So are you going through with this plea or not?

THE DEFENDANT: Yes. Yes, sir.

THE COURT: You intend to go through with the plea?

THE DEFENDANT: Yes.

THE COURT: Do you feel mentally healthy to go through with this plea?

THE DEFENDANT: I'll be all right.

THE COURT: You will be all right or are you okay?

THE DEFENDANT: Yeah.   I'm okay.

**{¶26}** McClendon has not shown that his mental condition or the medications he was taking at the time of his plea affected his judgment or understanding and does not claim that there was anything about the proceedings or his plea that he did not understand. There is nothing in the transcript that indicates that McClendon did not understand the implications of his plea and the rights he was waiving by pleading guilty.   Accordingly, we find that McClendon's guilty plea was knowingly, intelligently and voluntarily made and that the trial court did not err in accepting his guilty plea.   *See, e.g., McDowell*, 1997 Ohio App. LEXIS 113, at *2-7 (trial court did not err in accepting defendant's guilty plea where defendant stated that he was on medication and hears voices but "tr[ies] to ignore them as best I can" and indicated that he understood "what he was doing" in entering a guilty plea); *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 18-20 (fact that defendant was taking prescription medication at the time of the plea and told the trial court he was "emotionally disturbed" when asked whether he was feeling "clear headed" did not preclude him from entering a knowing, voluntary and intelligent plea where medication did not affect his judgment or prohibit him from understanding the proceedings); *State v. Dowdell,* 9th Dist. Summit No. 25930, 2012-Ohio-1326, ¶ 6-10

(rejecting defendant's claim that trial court erred in accepting his guilty plea without a mental health evaluation where trial court engaged in an extensive dialogue with the defendant at the plea hearing and   defendant's answers demonstrated that he understood the questions the trial court directed to him); *State v. Batke*, 8th Dist. Cuyahoga Nos. 95947 and 95948, 2011-Ohio-4636, ¶ 24-26 (trial court did not err in accepting defendant's guilty plea where trial court inquired about any medication defendant took and had a lengthy discussion with defendant about his medications and his mental illness diagnoses and defendant indicated that he felt "well enough" and could make "strong, good decisions" for himself); *Robinson,* 2007-Ohio-6831, at ¶ 17-18, 20 (trial court did not err in determining that plea was knowing, intelligent and voluntary notwithstanding fact that defendant was taking psychotropic medication where defendant communicated clearly with court and counsel throughout the proceedings and responded to the trial court's questions); *Bowen*, 1996 Ohio App. LEXIS 5612 at *9 (guilty plea was not unknowing and involuntary simply because defendant was on medication where defendant indicated that he understood what was happening and "participated in a 'reasonably intelligible' dialogue with the trial court"), quoting *Ballard*, 66 Ohio St.2d at 480, 423 N.E.2d 115.   McClendon's assignment of error is overruled.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
PATRICIA A. BLACKMON, J., CONCUR