[Cite as *State v. Reed*, **2022-Ohio-1058.**]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff-Appellee,          :

                          No. 110217

      v.                                       :

KATELYN REED,                           :

      Defendant-Appellant.      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 31, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-640250-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Mary Elaine Hall, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Katelyn Reed ("Reed") appeals from her conviction following her guilty pleas to involuntary manslaughter and aggravated robbery. For the reasons that follow, we affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

{¶ 2} On April 9, 2019, and into the morning of April 10, 2019, Reed conspired with codefendants Micaela Durand ("Durand"), Calvin Pittman, Jr. ("Pittman"), her boyfriend Roderick Stewart ("Stewart"), and Jaquan Ransom ("Ransom") to rob Albert Crenshaw ("Crenshaw") of drugs and money. Reed and her codefendants planned the robbery at Stewart's apartment. Reed, who was an acquaintance of Crenshaw, introduced him to Durand. On April 9, 2020, Crenshaw picked up Reed and Durand from Stewart's apartment and together they went to a bar. The three of them left the bar together and went to Crenshaw's house and used illicit drugs.

{¶ 3} Afterwards, Crenshaw drove Reed and Durand back to Stewart's apartment. When they pulled up, Reed got out of the vehicle and went up to the apartment while Durand stayed in the vehicle. Two witnesses reported to the police that while at home they heard two gunshots and then the sound of a vehicle driving off and crashing. The witnesses then looked outside and saw two African-American males with firearms run after the vehicle, and then the males fired more rounds into the vehicle. One of the males reached into the vehicle and grabbed something. Both males then fled the scene. Crenshaw was found in the vehicle and pronounced dead at the hospital from gunshot wounds.

{¶ 4} As a result of this incident, a Cuyahoga County Grand Jury indicted Reed on May 6, 2019, in CR-19-639515-B; however, this indictment was dismissed and Reed was reindicted on May 29, 2019. The latter indictment charged Reed with

seven counts: Count 1, aggravated murder, in violation of R.C. 2903.01(B) with one- and three-year firearms specifications; Count 2, aggravated robbery, in violation of R.C. 2911.01(A)(1) with one- and three-year firearms specifications; Count 3, aggravated robbery, in violation of R.C. 2911.01(A)(3) with one- and three-year firearms specifications; Count 4, aggravated murder, in violation of R.C. 2903.91(A) with one- and three-year firearms specifications; Count 5, murder, in violation of R.C. 2903.02(B) with one- and three-year firearms specifications; count 6, felonious assault, in violation of R.C. 2903.11(A)(2) with one- and three-year firearms specifications; and Count 7, felonious assault, in violation of R.C. 2903.11(A)(1) with one- and three-year firearms specifications.

{¶ 5} During discovery, Reed waived her right to a speedy trial twice: first on July 19, 2019, and again on December 4, 2019. On both occasions, the court held a hearing where her right was explained to her. Both times, Reed acknowledged that she understood not only her right, but what waiving that right entailed. Reed signed a written waiver both times. On both occasions, the court asked identical questions before accepting the waiver, including asking Reed if she was on medication. Both times, Reed stated she was on medication for anxiety, depression, and bipolar disorder.

{¶ 6} Reed's plea hearing was held on January 17, 2020. At that time, it was noted on the record that Reed had entered into a plea agreement with the state. The terms of the plea agreement were as follows: Reed would plead guilty to an amended Count 1, involuntary manslaughter, with the firearm specifications

deleted, and an amended Count 2, aggravated robbery, with the firearm specifications deleted. Both counts were first-degree felonies. Counts 3, 4, 5, 6, and 7 were dismissed. The last term of the agreement required Reed to testify truthfully on behalf of the state in any subsequent trial involving any of the codefendants. Before accepting Reed's plea, the trial court asked Reed what medication she was on and whether it affected her ability to understand what she was doing that day, to which Reed stated her medication did not affect her ability to understand the terms of her plea agreement.

{¶ 7} Prior to accepting Reed's plea, the trial court also explained that both guilty pleas were to first-degree felonies and what the maximum fine and prison term could be. The court also informed Reed that the offenses were qualifying offenses under S.B. 201 ("Reagan Tokes Law"), which would require the court to sentence her to a minimum term of 3, 4, 6, 7, 8, 9, 10, or 11 years and a maximum term, which would be the minimum term plus one-half of the minimum term. The court gave Reed an example, stating that if it sentenced her to an indefinite sentence with a minimum term of six years, the maximum term would be nine years.

{¶ 8} Last, the judge explained the rights Reed was waiving by pleading guilty, such as the right to a trial by jury, the right to representation, the right to cross-examine the state's witnesses, the right to have the court issue subpoenas for her own witnesses, her right not to testify, and the presumption of innocence the prosecution must overcome beyond a reasonable doubt. Reed stated she understood those rights and that by pleading guilty she was waiving them. There is

no evidence in the record that Reed stated she did not understand her rights, asked any questions of the court, or detailed any questions unanswered by her attorneys. Finding the pleas were made knowingly, intelligently, and voluntarily, the court then accepted Reed's guilty pleas to the amended Counts 1 and 2.

{¶ 9} On January 6, 2021, the trial court held Reed's sentencing hearing.[1] The prosecutor stated on the record that Reed had fulfilled her obligations under the plea agreement by testifying at the trial of the only codefendant whose case went to trial, Pittman. Two of Crenshaw's siblings addressed the court and the prosecutor read a letter from Crenshaw's teenage son to the court. After Reed, her aunt, and her attorney addressed the court on her behalf, the trial court proceeded to sentence Reed to four years on each counts one and two, which would run concurrently. The court then explained that because her guilty pleas to first-degree felonies are qualifying offenses under the Reagan Tokes Law, the court was required to give her sentence with a minimum term and a maximum term. The court chose to sentence Reed to a minimum term of four years and maximum term of six years. The court also informed Reed of the mandatory five-year postrelease control after her release. Reed's counsel objected to the indefinite sentence pursuant to the Reagan Tokes Law at that time.

{¶ 10} Reed timely filed her notice of appeal on January 11, 2021.

---

[1] The court takes judicial notice that the COVID-19 pandemic took place shortly after Reed's plea hearing in January 2020, delaying all subsequent hearings and trials including codefendant Pittman's trial, at which Reed testified.

## II. LAW AND ANALYSIS

{¶ 11} Reed assigns two errors for this court's review. Her first assignment of error alleges she received ineffective assistance of counsel when counsel failed to determine whether she was competent to enter a plea, by not filing motions to determine if Reed was competent or if she had any psychotic features or developmental disabilities before sentencing. Her second assignment of error alleges the trial court committed plain error by sentencing Reed pursuant to the Reagan Tokes Law because it violated her Sixth and Fourteenth Amendment Rights under the United States Constitution and the Ohio Constitution, Article I, Section 5.

{¶ 12} Both the Ohio and the United States Constitutions grant a defendant the right in all criminal prosecutions to have counsel's assistance for one's defense. Ohio Constitution, Article I, Section 10; U.S. Constitution, Sixth Amendment. The United States Supreme Court has reasoned that the right to counsel for one's defense entails having the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To that end, the United States Supreme Court has established the elements required to prevail on an ineffective assistance of counsel claim, which the Ohio Supreme Court has adopted. *See Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 13} One must show two things to succeed on such a claim: (1) counsel substantially violated an essential duty to the client, which requires showing that counsel's representation fell below an objective standard of reasonableness, and (2)

the violation prejudiced the defense, which requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Bradley* at 141-142, citing *Strickland* at 687-89.

{¶ 14} Regarding a defendant's alleged incompetency, the Tenth District has succinctly summarized Ohio law:

> Consistent with the notion of fundamental fairness and due process, a criminal defendant who is not competent to stand trial may not be tried or convicted. *See Pate v. Robinson*, 383 U.S. 375, 377, 86 S. Ct. 836, 15 L. Ed.2d 815 (1966); *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). The United States Supreme Court set forth the test to determine whether a defendant is competent to stand trial, stating that "* * * the 'test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). "The competency standard for standing trial is the same as the standard for pleading guilty." *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 57.
>
> The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains "sufficient indicia of incompetence," such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial. *See Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate*; and *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Thus, the failure to hold a competency hearing is harmless error when the record does not reveal sufficient indicia of incompetence. *State v. Eley*, 77 Ohio St.3d 174, 183-84, 672 N.E.2d 640 (1996). *See also State v. Hall*, 4th Dist. Jackson No. 99CA847, 2000 Ohio App. LEXIS 785 (Feb. 25, 2000), citing *State v. Brookins*, 8th Dist. Cuyahoga No. 73345, 1998 Ohio App. LEXIS 4662 (Oct. 1, 1998).
>
> A defendant is presumed competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he [or she] is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-

783, 804 N.E.2d 1, ¶ 28; *State v. Scurlock*, 2d Dist. Clark No. 2002-CA-34, 2003-Ohio-1052, ¶ 77; R.C. 2945.37(G).

*State v. Prophet*, 10th Dist. Franklin No. 14AP-875, 2015-Ohio-4997, ¶ 11-13. Based on the foregoing, Reed's counsel's performance could only be deficient if there was sufficient indica in the record of Reed's incompetency, such that her right to a fair trial was violated. *Id.*, citing *Eley* at *id.*

{¶ 15} In *State v. Ziga*, 8th Dist. Cuyahoga No. 108336, 2020-Ohio-911, ¶ 27, the defendant argued to this court that his counsel's failure to raise the issue of his competency to stand trial or request a psychiatric evaluation before trial constituted deficient performance; however, this court disagreed. The defendant had a diagnosis of bipolar disorder and attention deficit disorder and had attempted suicide on several incidents, but as this court stated in *Ziga*:

> "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him [or her] and of assisting his [or her] counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986); *see State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial."). This court has held that a person suffering from mental illness or taking psychotropic drugs may be able to understand the charges against him or her and assist in his or her defense. *See State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 16, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 89136, 2007-Ohio-6831.

*Id.* at ¶ 32. This court went on to hold that Ziga's counsel was not deficient for failing to request a competency evaluation because there was no evidence in the record of Ziga's incompetency or inability to understand the charges and assist his counsel in his defense. *Id.* at ¶ 35. The court also went on to note that even when assuming

arguendo that deficient performance was found, Ziga still failed the second prong of *Strickland* by failing to demonstrate a reasonable probability that had a competency evaluation been performed, the outcome would have been different. *Id.* at ¶ 36.

{¶ 16} In this case, we find similarly that Reed's counsel was not deficient for failing to request a competency evaluation. The record shows that Reed had two very experienced and well-respected defense attorneys for her case who represented her throughout the proceedings. At each hearing, the judge questioned Reed regarding her mental health and medication and whether she understood the rights she was waiving and the outcome of the proceedings. Whenever asked, Reed responded that her medication did not affect her ability to understand the proceedings or the rights she was waiving. For example, during the waiver of Reed's speedy trial right, the court asked Reed if she had the opportunity to discuss the waiver and the waiver form with her attorney, if it was her desire to waive the right, if she understood the waiver, and if she signed the waiver of her own free will. Reed answered all these questions in the affirmative. Upon a thorough review of the record in this case, the court can find no evidence that Reed ever expressed she did not understand the charges or waivers explained to her by the trial court or that there was any part of the proceedings or plea agreement she did not understand.

{¶ 17} Further evidence of Reed's competency and her understanding of the serious charges against her can be seen in her testimony related to her plea agreement. Reed was initially charged with seven counts, which included very serious crimes such as aggravated murder, murder, aggravated robbery, and

felonious assault, with each count containing one- and three-year firearm specifications. Despite these charges, Reed's two attorneys worked out a plea agreement where she only pled guilty to an amended Count 1 of involuntary manslaughter with the firearm specifications deleted and an amended count of aggravated robbery, also with the firearm specification deleted. The other five counts, as well as all the firearm specifications, were dismissed on the one condition that she testify truthfully at any codefendant's trial. The fact that Reed did testify, as required, is evidence that she was competent to have understood the seriousness of the originally indicted charges and all of the corresponding firearm specifications, which would have carried a large number of mandatory incarcerated years. Understanding the charges, she testified at Pittman's trial as required, which resulted in her only being sentenced to four years in prison despite essentially being the lynchpin in the murder and robbery of an innocent man.

{¶ 18} Based on our review of the record, there is no indicia of evidence that Reed failed to understand the charges against her or was unable to assist either of her attorneys in her defense. Nor does Reed point to any evidence of incompetency. The only argument Reed presents to allege her incompetency is her medication and diagnoses, which as stated previously is not evidence of incompetency. *See State v. Prophet*, 10th Dist. Franklin No. 14AP-875, 2015-Ohio-4997, ¶ 21 ("It is now well established, however, that having a mental illness or taking medications to treat a mental illness, does not equate with a finding of legal incompetency," citing R.C. 2945.37(F) (a "court shall not find a defendant incompetent to stand trial solely

because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient * * * or because the defendant is receiving or has received psychotropic drugs or other medication.").

{¶ 19} Furthermore, just as in *Ziga*, Reed's assignment of error would also fail the second prong of the *Strickland* test because she has failed to demonstrate prejudice or that an independent psychological evaluation and report would have changed the outcome of her plea or sentencing. Reed's assertion that an independent report would have likely resulted in a sentence of house-arrest or mental-health treatment is speculative, which is insufficient to satisfy her burden of demonstrating prejudice. *Ziga* at ¶ 36.

{¶ 20} Similarly, there can be no deficiency by Reed's counsel for failure to file a motion withdraw her guilty plea based on any alleged incompetency, since we have found no evidence of incompetency in the record.

{¶ 21} Therefore, based on the foregoing, Reed's first assignment of error is overruled.

{¶ 22} In her second assignment of error, Reed alleges the trial court committed plain error by sentencing her to an indefinite term pursuant to R.C. 2929.144(B)(3) and 2967.271, also known as the Reagan Tokes Law, because the statute violates her Sixth and Fourteenth Amendment Rights under the United States Constitution and the Ohio Constitution, Article I, Section 5.

{¶ 23} Reed's arguments are overruled pursuant to this court's en banc decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, which

overruled the challenges presented in this appeal to the Reagan Tokes Law enacted through S.B. 201. Therefore, we find that Reed's sentence pursuant to Reagan Tokes was not a violation of her constitutional rights. Reed's second assignment of error is overruled.

**{¶ 24}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR

N.B. Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.

Judge Lisa B. Forbes is constrained to apply *Delvallie*. For a full explanation, *see State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470 (Forbes, J., dissenting).