[Cite as *State v. Hicks*, 2024-Ohio-974.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,         :

                    No. 112419

    v.                                    :

RONALD HICKS, JR.,                  :

    Defendant-Appellant.      :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED IN PART
**RELEASED AND JOURNALIZED:** March 14, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-660448-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Gregory J. Ochocki, Assistant Prosecuting
Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet, Jaye M. Schlachet,
and Eric M. Levy, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Ronald Hicks, Jr. ("Hicks"), appeals his guilty plea and sentence, raising the following five assignments of error for review:

**Assignment of Error I:**  [Hicks's] plea must be vacated in violation of Crim.R. 11 as not being entered knowingly, intelligently, and voluntarily.

**Assignment of Error II:**  The trial court erred when it denied [Hicks's] presentence motion to withdraw guilty plea.

**Assignment of Error III:**  The trial court erred when it imposed a prison sentence which was contrary to law.

**Assignment of Error IV:**  [Hicks's] indefinite sentence imposed under the Reagan Tokes sentencing scheme violates [Hicks's] rights under the United States Constitution applied to the state of Ohio through the Fourteenth Amendment and the Ohio Constitution as it denies [Hicks] due process of law; violates the right to equal protection; violates the Sixth Amendment right to a jury trial; violates the separation[-]of[-]powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction (["DRC"]).

**Assignment of Error V:** [Hicks's] sentence is contrary to law where the trial court failed to comply with the required notices contained in R.C. 2929.19(B)(2)(c) when imposing [the] sentence.

For the reasons set forth below, we affirm in part, reverse in part, and remand for the purposes of (1) issuing of a nunc pro tunc entry to correct the trial court's sentencing journal entry and (2) providing Hicks with the required notifications set forth in R.C. 2929.19(B)(2)(c).

## I.  Facts and Procedural History

{¶ 2}  In June 2021, following the death of three-year-old, R.M. (d.o.b. 04/20/18), Hicks was criminally indicted on six counts:  Counts 1, 2, and 3, murder; Count 4, endangering children; Count 5, felonious assault; Count 6, endangering children.  All six counts carried repeat violent offender and notice of prior conviction

specifications. The child-endangering charges also included furthermore clauses for the serious physical harm that resulted.

{¶ 3} At his June 2021 arraignment, Hicks pled not guilty and on the next day, the trial court granted Hicks's request for a referral to the court's psychiatric clinic for evaluations concerning his competency to stand trial and eligibility for his case to be transferred to the mental-health docket. Hicks's case progressed with pretrials and discovery being obtained and exchanged.

{¶ 4} Months later in September 2021, a hearing was held regarding a number of issues, including Hicks's competency to stand trial. The trial court indicated that it was provided with a July 2021 competency-evaluation report completed by Dr. Michael Aronoff ("Dr. Aronoff"), the chief of psychology of the court's psychiatric clinic. The trial court, on the record, reviewed Dr. Aronoff's diagnostic impression of Hicks, including his diagnoses of unspecified bipolar-related disorder with possible psychotic feature and unspecified trauma and stress-related disorder based on the manic and depressive cyclical symptoms, nightmares, and flashbacks reported by Hicks and the possibility that Hicks experienced psychotic symptoms, such as auditory hallucinations, paranoia, and ideas of reference, concurrent with his mood symptoms. Further existing, for Hicks is alcohol dependent with sustained remission, cannabis dependent, and history of attention-deficit hyperactivity disorder provisionally. According to the trial court's reading of the report, Hicks also reported to Dr. Aronoff that he was the only one present when the deceased child was found and that he called 911 to report it. The

trial court further noted Dr. Aronoff's findings and opinions that Hicks understood the nature and objective of the legal proceedings against him and could assist in his defense based on the following:

> He's aware of his charges, the acts constituting such, the relative seriousness[,] and the possible sentence he may receive if convicted of them. He's able to name various court personnel and describe their roles. He's aware of his available plea options as well as the concept of plea bargaining. He manifests an appreciation of the adversarial nature of the legal proceedings against him.

> Any mild deficits [Hicks] demonstrates with respect to his understanding [of] the nature and objective of the legal proceedings against him are easily rectified with explanation using basic rudimentary terms. If this is exercised, [Hicks] demonstrates the capacity to comprehend as well as retain this information.

> * * *

> [Hicks] reported he trusts his attorney. He's able to confer with him, consider any legal advice he may offer, and will work collaboratively with him in order to obtain the most favorable outcome of his court case.

> [Hicks's] speech and thought processes are coherent and relevant. Thus, he would be capable of providing his attorney with pertinent information as well as testifying and challenging prosecution witnesses. Although [Hicks] demonstrates some mild deficits in attention and concentration, these do not appear to rise at the level where they would adversely affect his ability to follow the court proceedings.

> [Hicks] is motivated to receive a disposition most favorable to him. [Hicks] has demonstrated by his behavior during this evaluation that he would be capable of acting in an appropriate manner and tolerating the stress of trial. Although he became tearful at several points during the interview, he was quickly able to regain his composure.

(Tr. 5-7.) The parties stipulated to the findings and conclusions of the competency evaluation. The trial court found Hicks competent to stand trial. During the

hearing, the state mentioned that Hicks indicated in a supplemental report that he hears voices in his head and those voices takeover when he is angry and when he feels like he is backed into a corner. Hicks also told the trial court that he was not on mental-health medication at the time of the alleged offense.

{¶ 5} With parties and counsel present, the record reveals that at the May 2022 final pretrial hearing, the state advised of a potential plea deal being reached. The state explained that Count 2 murder would be amended to involuntary manslaughter, a first-degree felony, including the specifications of notice of prior conviction and repeat violent offender; Counts 4 and 5 would be amended by deleting those specifications included with the second-degree felonies of child endangering and felonious assault; Counts 1, 3, and 6 would be dismissed. Finally, the state indicated that it agreed with the defense to a recommended sentence of 15 to 18 years "with no early release" and of "no merger of offenses." (Tr. 24.) Hicks's trial counsel advised the court that Hicks understood the agreement to be a global resolution of this case as well as a probation-violation case and stated:

> I think my client is prepared to enter a guilty plea today. I have discussed with him his constitutional rights, his trial rights, and the relative penalties as well as the defenses he may have at trial and I believe that he is ready, willing, and able to enter a knowing, intelligent, and voluntary guilty plea today, your Honor.

(Tr. 25.) The trial court advised Hicks as follows:

> Before we proceed, the Court just wants to make sure that it goes over a couple things with you because it wants to make sure that if you want to enter a plea that that plea is, in fact, knowingly, intelligently, and voluntarily made. What has been presented to this Court is that the parties have reached an agreement and the agreement is that you would

serve 15 to 18 years and that's what the Court would consider. I want to make sure you understand that this Court looks at everything. This Court doesn't know anything with regards to what transpired and the Court needs to hear what happened. That agreement between the parties does not bind the Court on that. The Court considers that along with everything that it will hear.

(Tr. 26.) The trial court indicated that it would review the judgment entry from Hicks's other case and give him an opportunity to speak with his attorney.

{¶ 6} Following an off-the-record discussion, Hicks's trial counsel informed the court that Hicks would accept the plea offer. The trial court then personally addressed Hicks asking the following questions: if he had an opportunity to have the charges read to him by his attorney and reviewed them adequately so he knows what was going on; if he is satisfied with the representations that his attorney made with regards to keeping him advised of what was presently before the court; if he understood there was no promise of a specific sentence; and if he was satisfied by the representation he received from trial counsel. Hicks responded, "yes."

{¶ 7} The trial court also asked Hicks's if his medications affected his ability to understand what was happening or his ability to enter the plea; whether anyone threatened or forced him to enter a plea of guilty; and whether anyone made any promises to him other than the state's terms of the offer. Hicks responded, "no." The trial court asked, "Do you understand by entering a plea today that is a violation of your community control, and you could receive a separate sentence for that case as well as the case you're about to enter a plea for?" (Tr. 34.) Hicks answered, "yes." The trial court proceeded to go over Hicks's constitutional rights that he was

presumed innocent until proven guilty; that by entering a plea of guilty, he admitted to the truth of the facts and his full guilt; that he had a right to a jury or bench trial; that the state must prove his guilt beyond a reasonable doubt as to each element of the crimes charged; that he had rights to subpoena witnesses to testify on his behalf and the right to cross-examine witnesses, which his trial counsel would be available to assist him with; that he could not be forced to testify against himself and that his silence could not be used against him to prove his guilt; and that the trial court could proceed with judgment and sentence him immediately after his plea. Hicks acknowledged his understanding of these rights and that he would be waiving them in order to plead guilty to the charges as outlined by the state.

{¶ 8} The trial court proceeded to go over the amended charges with Hicks and explained to him the maximum penalty he could receive for each count and the parties' agreement regarding a recommended sentence of 15 to 18 years in prison; it also explained nonmerging offenses and that there would be no early release. Hicks said that he understood the offenses to which he was pleading guilty and the possible penalties he faced.

{¶ 9} The trial court then stated:

> With regards to these matters and that the Court has already indicated that this is prison time and that you will be going to prison, upon your release — with regards to prison in these particular matters and that we do have felony of the first degree, upon your release that would be a mandatory minimum of two years and up to a maximum of five years with regards to supervision with regards to the Parole Board. The Court must also advise you that because this is a felony of the first degree committed after March 22, 2019, Reagan Tokes does apply to this as well.

Reagan Tokes was a statute that this Court has indicated [be]came applicable on March 22, 2019, whereas whatever sentence the Court imposes the — it is a — the Court sentence is a definite sentence, but there is a tail that is attached and it is one-half of the time imposed on that felony of the first degree. So[,] if the Court were to impose eight years on that felony of the first degree, then an additional four years could be added as a tail as it relates to that. And then the determination as to whether that additional four years is served is based on the Ohio Department of Rehabilitation's assessment of you, whatever criterion they may have while you're in prison whether they can extend that time.

* * *

With regards to the [postrelease control ("PRC")] once you're released if you're convicted of a new felony on [PRC] in addition to being punished for the new offense, the judge could add an additional consecutive prison term of one year or what time remains on the [PRC] term, whichever is greater as a maximum. While you're on [PRC] if you fail to report to your parole officer, you could be charged with escape, which is a felony.

(Tr. 39-41.) Hicks indicated his understanding and that he did not have questions about his rights, the charges and penalties, or anything else being done. Hicks retracted his former plea of not guilty and entered a plea of guilty to Counts 2, 4, and 5, as amended. The trial stated: "Let the record reflect that the Court finds Mr. Hicks has knowingly, voluntarily and with a full understanding of his rights entered his change of plea. I accept it and make a finding of guilt." (Tr. 43). Counsel expressed that they were each satisfied with the court's compliance with Crim.R. 11.

{¶ 10} The trial court's journal entry entered following Hicks's plea indicates that the parties "agreed to a recommended prison sentence range of 15 to 18 years with no early release" and that Hicks's trial counsel stipulated that felonious assault and endangering children were non-merging offenses to involuntary manslaughter.

(Journal entry, 05/16/22.) Hicks's sentencing hearing was set for two weeks later. The parties agreed to review a presentence-investigation and mitigation report from Hicks's 2020 sentencing.

{¶ 11} At Hicks's scheduled sentencing hearing, defense counsel addressed the court and requested a continuance, advising that Hicks wanted to withdraw his plea. Defense counsel asked that he be permitted time to file a written motion to which the state could respond. Hicks's counsel explained, "I believe it's his intention to — he's saying he's innocent of this charge and that it wasn't a good idea to enter a guilty plea to something he didn't do." (Tr. 47.) The trial court granted defense counsel's request and set a briefing schedule, and a new hearing date.

{¶ 12} In his June 2022 presentence motion to withdraw his guilty plea, Hicks explained that R.M. died while under Hicks's care and that the state alleged that Hicks murdered the child by either beating or shaking him. Hicks acknowledged that he pled guilty, that the parties jointly recommended a sentence 15 to 18 years in prison, and that this would mean the avoidance of the "life tail" associated with his original murder charges and the inherent risk of going to trial. Hicks further acknowledged that he was the only adult present at the time of the child's death and that this fact alone may sway a jury to find him guilty, setting him up for a potential life sentence. However, Hicks argued that throughout the proceedings, he claimed actual innocence, that he did not know how the child died, and that he did not inflict any injury on the child, and that he had witnesses who

were willing to testify that they observed other people violently shaking R.M. Hicks believed he had evidence that would tend show that the child died by other means.

{¶ 13} The state, in its brief in opposition, countered by emphasizing that Hicks entered a knowing, intelligent, and voluntary guilty plea per Crim.R. 11 and that his claim of actual innocence, based on bold assertions without evidentiary support, was not a sufficient reason to withdraw his guilty plea. The state argued that some of the phone calls Hicks made from jail following his guilty plea indicated that "he had a change of heart and suffered from buyer's remorse." The state provided a disk with the recorded jail calls between Hicks and his mother, father, and wife, as well as a summary of the relevant comments.[1]

{¶ 14} During those calls, Hicks explained to his family members that he accepted a plea deal that involved a mandatory prison term of 15 to 18 years without early release. When Hicks informed his wife of the negotiated plea agreement, she expressed dissatisfaction with the agreed-upon recommended sentence of 15 to 18 years and told Hicks that if he served more than 5 years in prison, he would relinquish custody of their daughter and she would move to Florida with another man, where he would be unable to contact her directly. Throughout the recordings, Hicks and his wife discussed the difficulties she would face raising their daughter while Hicks was imprisoned. Hicks also expressed concern about his sentence being

_____

[1] Hicks stipulated to the jail calls on July 18, 2022, at a hearing on his presentence motion to withdraw his guilty plea. While the disk and summary were not included in the record originally received by this court, the parties supplemented the record with true and accurate copies of those items following a sua sponte order.

extended under the Reagan Tokes Law because he believed he would have to fight in prison.

{¶ 15} At the July 2022 hearing on Hicks's motion to withdraw his guilty plea, Hicks's counsel advised:

> Hicks is claiming innocence here. I think he was in this house with these other people and this horrible thing happened, but he does not recall what happened. He doesn't know. He has claimed to me on numerous occasions that he doesn't know what happened.
>
> He also claims he may have witnesses. I have spoken to some of the people who have made comments to me that they would tend to give testimony that might support an allegation that there were people in this child's life, not including Hicks, who may have been shaking the child. Before I don't want to make any allegations that I can't support, but I have had people in his orbit tell me this. I think those people would be subpoenaed at trial and asked to offer that testimony at trial as to whether or not there is another possible explanation for the death of this child.
>
> Nobody witnessed this. There [are] no witnesses that I am aware of in this case who will come in and say I saw Ronald Hicks kill that child. Nobody is going to say that.
>
> We're left with medical records and autopsy reports that we'll have to resolve.

(Tr. 53-54.) The state repeated its arguments made in its filed brief again highlighting that the trial court complied with Crim.R. 11 at the change-of-plea hearing and that Hicks's motion was premised on a change of heart and buyer's remorse established by Hicks's jail calls. Finally, the trial court addressed Hicks directly, going over with him the conversations and events that occurred during his plea hearing, the court informed Hicks that it had reviewed his motion, the parties' briefs in their entirety, and listened to the arguments presented. Ultimately, the trial

court denied Hicks's presentence motion to withdraw his guilty plea stating, "Mr. Hicks, this Court believes that you had an opportunity to look at some things after the fact, that you may have been influenced by some individuals after the fact, you may have had buyer's remorse, but that is not significant for this Court to vacate the plea." (Tr. 59.)

{¶ 16} At the August 2022 sentencing hearing, the trial court reviewed Hicks's guilty plea and the maximum prison term that could result from each count. The trial court stated: "The Court was advised that there was a recommended sentence, 15 to 18 years, with no early release. And that the mandatory time — there were no merger issues as agreed by the parties as well." (Tr. 62.)

{¶ 17} The trial court then heard from the state, R.M.'s mother, defense counsel, and Hicks. The state explained the facts and circumstances surrounding R.M.'s death: "He was [two] years old at the time, blue eyes, blond hair, 41 pounds; R.M.'s mother was at work and Hicks was watching R.M. along with some other children all under the age of four; that at some point Hicks went upstairs and found R.M. laying on the bed unconscious with a plastic bag pulled over his head Hicks upon discovering R.M., who also had blood on his lip and the lip was turning blue, called the police to tell about R.M.; Hicks was the only adult home when this happened and he told EMS it was probably only three to five minutes that the child was by himself in this condition." The state explained that, following an autopsy, the medical examiner determined R.M.'s cause of death was homicide and that the child's injuries were consistent with blunt force impacts, shaking, and child abuse.

Next, R.M.'s mother showing pictures of her son, told the trial court that R.M. was very happy, loved Hicks, and called him dad. The trial court then heard from defense counsel, who noted that Hicks is a 26 year old, and discussed his struggles throughout childhood and school; his I.Q. of 59, diagnoses of mild retardation as well as bipolar disorder and anxiety disorder, which he had not been taking medication for; and concerns regarding his possible development of post-traumatic stress disorder. Hicks's counsel also mentioned that Hicks often experienced nightmares and flashbacks about R.M. Finally, Hicks addressed the court, stating that he did not know what happened, he wished he did, he loved R.M. as if he were his own child, and he has "tried to kill himself five times over this kid." (Tr. 73.)

{¶ 18} Before imposing Hicks's sentence, the trial court advised that it considered the record, the oral statements made during the sentencing hearing, the prior presentence-investigation, mitigation, and penalty reports, plea negotiations, the victim-impact statement, and the fact that Hicks was on the mental-health docket. The trial court said that it came to its decision based upon the overriding principles and purposes of felony sentencing namely to protect the public from future crime by the defendant and others and to punish the offender using the minimum sanctions that the court determines and accomplishes those purposes without imposing unnecessary burden on the state and local government resources. The trial court said it considered the seriousness and recidivism factors relevant to the offenses and the offender pursuant to R.C. 2929.12. The trial court found that

prison was consistent with the purposes of R.C. 2929.11 and imposed the following

sentence:

> As to Count 2, involuntary manslaughter, the Court imposes a sentence of eight years. As to Count 4, endangering children, four years. As to Count 5, felonious assault, five years. Count 2, the Court is going to impose a prison sentence consecutively * * *.
>
> So the four years in Count 2 will be served consecutive to Count 1 giving us a total of 12 years.
>
> With Regan Tokes, which is half of the eight years, that's four, which is going to give us a total of 16 years because Count 5 is going to be served concurrent with regards to Count 1. So the total with Reagan Tokes is going to be 16 years. That's 12 plus four.
>
> As indicated, there is no early release. That's mandatory time. The defendant is not eligible for early release. And the Court considered all the things that was presented in determining that sentence.
>
> * * *
>
> PRC is going to be five years mandatory on the felony of the first degree upon your release. It's a mandatory minimum of two years up to a maximum of five years. That would apply to all of the offenses except for Count 4, the endangering children. And the felonious assault would be different also. That would be a mandatory minimum of 18 months up to a maximum of three years; however, the Court is going to merge PRC so that it is five years mandatory under Count 2.

(Tr. 77-79.)

{¶ 19} The trial court's original August 3, 2022 sentencing entry was

corrected by a nunc pro tunc entry on August 8, 2022, wherein consecutive-

sentencing language was added. Hicks was ordered to serve the following prison

sentence:

> The court imposes a prison sentence at the Lorain Correctional Institution of 12 year(s). [Hicks] is sentenced to a prison term of 8

years in Count 2. [Hicks] is sentenced to a prison term of 4 years in Count 4. Sentence to run consecutive to prison term imposed in Count 2. [Hicks] is sentenced to a prison term of 5 years in Count 5. Sentence to run concurrent to prison term imposed in Count 2. Court advised [Hicks] of the Re[a]gan Tokes Law as it applies to Count 2. [Hicks] is advised that the sentence is now considered an indefinite sentence with the minimum possible sentence of 8 years and maximum possible sentence up to 16 years for a total aggregate sentence of 12 to 16 years in Count 2.

(Journal entry, August 3, 2022, and Nunc Pro Tunc entry, August 8, 2022.)

{¶ 20} In February 2023, Hicks was granted leave to file this delayed appeal and appellate counsel was assigned for him.

## II. Law and Analysis

### A. The trial court did not abuse its discretion by denying Hicks's motion to withdraw his guilty pleas

{¶ 21} In his first two assignments of error, Hicks challenges his negotiated plea agreement. For ease of discussion, we will address Hicks's second assignment of error first since procedurally it was raised before the trial court before sentencing and then we will address his first assignment of error disputing his guilty pleas on appeal.

{¶ 22} In Hicks's second assignment of error, he contends that the trial court erred when it denied his presentence motion to withdraw his guilty plea.

{¶ 23} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed, but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 24} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E. 2d 715 (1992). It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

{¶ 25} The decision to grant or deny a presentence motion to withdraw is within the trial court's discretion. *Id.* at paragraph two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* at 527. An abuse of the discretion occurs when a court exercises "its judgment, in an unwarranted way * * *." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E. 3d 463, ¶ 35.

{¶ 26} Courts have traditionally considered nine factors when reviewing a trial court's decision denying a defendant's presentence motion to withdraw a guilty plea. Those factors include whether a defendant was (1) represented by competent counsel, (2) given a full Crim.R. 11 hearing before he entered the plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E. 2d 863 (8th Dist.1980), paragraph three of the syllabus. Additionally, consideration is given to whether (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the defendant understood the nature of the charges and the possible penalties, and

(8) the defendant had evidence of a plausible defense. *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995), *see also State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269. Finally, courts have considered (9) "whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea." *State v. Barnes*, 172 Ohio St.3d 63, 2022-Ohio-4486, 222 N.E.2d 537, ¶ 32 (Brunner, J., concurring). Citing *State v. Richter*, 8th Dist. Cuyahoga Nos. 46122 and 46123, 1983 Ohio App.LEXIS 15476, 2 (Sept. 29, 1983); *State v. Dawson*, 2d Dist. Green No. 97-CA-105, 1998 Ohio App. LEXIS 1160, 3 (Mar. 27, 1998). These factors include whether: (5) the state will be prejudiced by the withdrawal; (6) the motion was made timely; (7) the motion states specific reasons for withdrawal; (8) the defendant understood the nature of the charges and the possible penalties; and (9) whether the defendant was perhaps not guilty or had a complete defense. *Id.*, citing *Fish*; *State v. Moore*, 8th Dist. Cuyahoga No. 98132, 2012-Ohio-5734.

{¶ 27} Moreover, "[a] mere change of heart regarding the guilty plea and the possible sentence is not a legitimate basis for the withdrawal of a plea." *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 7, citing *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991); *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988). When faced with a claim of innocence in a presentence motion to vacate a guilty plea, the trial judge must determine whether the claim amounts to more than the defendant's change of heart about the plea agreement. *State v. Maddox*, 2017-Ohio-8061, 98 N.E.3d 1158, ¶ 18 (8th Dist.), citing *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146,

¶ 27, and *State v. Kramer*, 7th Dist. Mahoning No. 01-CA-107, 2002-Ohio-4176, ¶ 58. However, when a guilty plea is voluntarily, knowingly, and intelligently entered, a defendant's protestations of innocence are insufficient grounds for vacating the plea. *Id.*, citing *Minifee*, citing *State v. Bloom*, 8th Dist. Cuyahoga No. 97535, 2012-Ohio-3805, ¶ 13.

{¶ 28} At the July 2022 hearing held on Hicks's presentence motion to withdraw his guilty pleas, the state relying upon it's arguments from its written brief in opposition to Hicks's motion, reminded the court of its compliance with Crim.R. 11 and of the disk of jail calls with summaries it prepared as to what it felt were pertinent parts to support its position that Hicks's was seeking a withdrawal of his plea because he had a change of heart after speaking with his family. The state maintains that these jail calls support that Hicks wife threatened to move to Florida with another man if he were to serve more than five years in prison as a reason for Hicks wanting to withdraw his plea since these calls occurred right after his change-of-plea hearing.

{¶ 29} Hicks's counsel pointed out to the trial court that Hicks's motion was timely raised before sentencing and that case law instructs that "it ought to be freely and liberally granted. Make no mistake about it here, Mr. Hicks is claiming innocence." Hicks's counsel explained that Hicks does not recall what happened and told his counsel on numerous occasions he does not know. Hicks's counsel further expressed that he spoke with people that "might support" that others in the child's life may have shaken R.M. He told the court nobody witnessed this and that

no one will come into court to say that "I saw Ronald Hicks kill that child." And that "we're left with medical records that we'll have to resolve," stating that Hicks's desire is to have the state meet its burden of proof under the constitution.

{¶ 30} After reviewing the record in the instant case, we find that the trial court did not abuse its discretion in denying Hicks's presentence motion to withdraw his guilty pleas. The record reveals that Hicks was afforded a full hearing before entering his guilty plea where Hicks indicated he was satisfied with the representation he received from trial counsel and understood the nature of the charges and the possible penalties. While Hicks's presentence motion to withdraw his guilty plea was made timely, the motion did not offer specific details about the identity of potential witnesses or provide a basis for a plausible defense or claim of innocence. Rather, Hicks's motion conceded that he did not know what happened and was the only adult present and in charge of R.M. at the time of the child's death.

{¶ 31} While a claim of innocence is a factor to be weighed in considering a motion to withdraw a plea, it alone does not mandate the granting of such a motion. Westley, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, at ¶ 7. Indeed, "when faced with this claim, 'the trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement.'" Id., quoting Kramer, 7th Dist. Mahoning No. 01-C.A.-107, 2002-Ohio-4176, at ¶ 58.

{¶ 32} Therefore based on the foregoing, we cannot say that the trial court exercised its discretion in an unwarranted way; we cannot conclude that it abused

its discretion when it denied Hicks's presentence motion to withdraw his plea based upon "being influenced by others" amounting to a change of heart.

### B. Hicks's plea was knowingly, intelligently, and voluntarily made and it will not be set aside to correct a manifest injustice

{¶ 33} In Hicks's first assignment of error, he argues that his guilty plea was not entered knowingly, intelligently, and voluntarily pursuant to Crim.R. 11(C) and must be vacated. Specifically, he argues that the trial court failed to (1) explain the maximum penalties; (2) that he was not made aware of his possible defenses available to him; and (3) that his counsel was ineffective for not informing him of available pleas and defenses to him.

{¶ 34} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). The purpose of Crim.R. 11(C) is to require the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Poage*, 8th Dist. Cuyahoga No. 110577, 2022-Ohio-467, ¶ 9, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). On appeal, we review the trial court's adherence to Crim.R. 11(C) de novo and consider the totality of the circumstances to determine whether the plea hearing

was following the rule. *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26.

{¶ 35} First, Hicks claims that the trial court failed to comply with a Crim.R. 11(C)(2)(a), a nonconstitutional provision, when it failed to advise him that a violation of the terms and restrictions of PRC could result in the administration imposition of an additional prison sanction. Hicks contends that the PRC advisement provided to him at the time of his guilty plea did not inform him of the maximum potential penalty that could be imposed, making a showing of prejudice unnecessary.

{¶ 36} Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without first addressing the defendant personally and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 37} Crim.R. 11(C)(2)(a) requires that the trial court determine that the defendant is "making the plea voluntarily, with the understanding * * * of the maximum penalty involved * * *." In instances where the trial court imposes a prison term, PRC is part of the "maximum penalty involved" and compliance with Crim.R. 11(A)(2) requires that a trial court advise the defendant of any mandatory PRC at the time of the plea. *State v. Sullivan*, 8th Dist. Cuyahoga Nos. 111621, 111917, 2023-Ohio-1036, ¶ 14, citing *State v. Austin*, 8th Dist. Cuyahoga No. 105981, 2019-Ohio-1983, ¶ 16, citing *State v. Griffin*, 8th Dist. Cuyahoga No. 83724, 2004-Ohio-4344, ¶ 13, and *State v. Bell*, 8th Dist. Cuyahoga No. 96446, 2011-Ohio-5667, ¶ 10.

{¶ 38} For a plea to be entered knowingly, voluntarily, and intelligently, the court is only required to advise the defendant of the period of postrelease control that would be imposed as part of the "maximum penalty involved" in the plea. *Id.* at ¶ 20. This court will not invalidate a guilty plea regarding a nonconstitutional right, like PRC, unless (1) the trial court completely failed to comply with a portion of Crim.R. 11(C) or (2) without a complete failure proven, the defendant shows prejudice, i.e., that he or she would not have otherwise entered the plea.

{¶ 39} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15, and *State v. Stewart*, 51

Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977); Crim.R. 52. A limited exception exists when the trial court fails to explain the constitutional rights waived by the defendant when pleading guilty as outlined in Crim.R. 11(C)(2)(c). *Id.* at ¶ 14, citing *State v. Clark*, 119 Ohio St. 3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, and *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 62, syllabus. A trial court's *complete* failure to comply with a portion of Crim.R. 11(C) also eliminates the defendant's burden to show prejudice. (Emphasis sic.) *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 40} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *Nero*, 56 Ohio St. at 108, 564 N.E.2d 474. This includes instances where the trial court fails to fully cover the "nonconstitutional" aspects of the plea colloquy. *Id.* at 14, citing *Veney* at ¶ 17 (distinguishing the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b) from the constitutional rights notifications required by Crim.R. 11(C)(2)(c)). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *Nero* at 108. "[T]he questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 41} Hicks concedes that the trial court complied with Crim.R. 11 as it relates to his constitutional rights because he knowingly, voluntarily and intelligently waived his rights. Regarding his nonconstitutional rights, he also acknowledges that (1) he was going to be sentenced to prison and, upon his release, there was a mandatory period of PRC with a minimum of two years and a maximum of five years; (2) that while on PRC, if he failed to report he could be charged with a new felony, escape; and (3) if he was convicted of a new felony, an additional prison term of one year or the time remaining on PRC could be consecutively imposed by the sentencing judge. However, Hicks claims that these advisements never addressed that there could be consequences imposed by the parole board for a violation while on PRC and that those consequences include a prison sanction. Hicks claims that while a trial judge is not required to advise a defendant of all potential sanctions for a violation of PRC to comply with Crim.R. 11, the trial court must, at minimum, advise that a violation of the conditions of PRC may result in the imposition of a prison sentence and that the maximum sentence that could be imposed is one-half of the original sentence. Hicks argues that the trial court's failure to advise him of the potential administrative imposition of prison for a violation of PRC amounted to a complete failure to comply with Crim.R. 11, excusing his showing of prejudice.

{¶ 42} The state counters that the trial court advised Hicks of the mandatory portion of his PRC period and, thus, did not completely fail in its duty to advise Hicks of the maximum possible penalty that could be imposed. The state further claims

there is nothing in the record that demonstrates Hicks suffered any prejudice based on the PRC advisement he received and indicates that Hicks did not raise this issue in his presentence motion to withdraw his plea. See discussion above.

{¶ 43} Our review of the transcript shows that the trial court advised Hicks that he would be supervised by the parole board for "a mandatory minimum of two years and up to a maximum of five years" upon his release from prison, explained to Hicks that if he was convicted of a felony while on PRC, he could receive an additional consecutive prison term on top of the punishment for the new offense in the greater amount of either one year or the remaining time on his PRC. He was also informed that if he failed to report to his parole officer while on PRC, he could be charged with the felony of escape. Hicks indicated his understanding and did not have questions about his rights, the charges, the penalties, or anything else being done. Both the state and Hicks's defense counsel told the trial court that they were satisfied that the trial court complied with the requirements of Crim.R. 11. Based on the foregoing, the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a) in its PRC colloquy, and we decline to find otherwise. C*ompare Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, at ¶ 22 (holding the trial court completely failed to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty when the court did not mention PRC in the plea colloquy, even though the defendant was subject to mandatory PRC).

{¶ 44} Thus, Hicks must demonstrate he was prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a) for his guilty plea to be vacated. *See, e.g.*,

*State v. Soltis*, 8th Dist. Cuyahoga No. 92574, 2009-Ohio-6636 (noting that when addressing challenges of guilty pleas on the basis of a trial court's failure to adequately explain the ramifications of PRC, Ohio courts have concluded that a defendant must demonstrate a prejudicial effect to warrant a vacation of the guilty plea); *State v. Allen*, 8th Dist. Cuyahoga No. 93488, 2010-Ohio-3718, ¶ 10-11 (finding Allen did not meet his burden of showing prejudice that would necessitate vacating his plea absent evidence that "the plea would not otherwise have been made"). We note that Hicks did not argue that but for the parole violation advisement, he would not have pleaded guilty in his presentence motion to withdraw his guilty plea. On appeal, Hicks claims that had he been aware that the parole board could administratively impose additional prison sanctions upon him for an alleged violation of its PRC requirements he would not have entered his guilty plea. Hicks provides no basis for this claim. Nor does our review of the record support Hicks's assertion. The record reflects that amongst other serious charges, Hicks was facing multiple murder counts that could result in the potential penalty of life in prison. Hicks accepted a plea deal with an agreed sentencing range of 15 to 18 years, avoiding the inherent risk of going to trial and a potential conviction with a "life tail." Therefore, we decline to find that Hicks's guilty plea was not entered knowingly, intelligently, and voluntarily based on the trial court's PRC colloquy.

{¶ 45} Hicks also argues that his plea was not entered knowingly, intelligently, and voluntarily because the trial court and trial counsel failed to consider defenses that Hicks may have available to him. Specifically, Hicks argues

that he was not aware of the defenses of not guilty by reason of insanity and/or of the defenses of blackout or voluntariness of the act. He maintains that the trial court should not have accepted his guilty plea without further evaluations of his sanity at the time of the offense(s). Hicks contends that despite being in Mental Health Developmental Disabilities court, no coordinated efforts were made by the trial court, jail, trial counsel, providers, or others to ensure that he was provided with the services and evaluations necessary to guide him through this legal matter.

{¶ 46} Our review of the record shows otherwise. One day after Hicks was arraigned, the trial court granted his request to be evaluated by the court's psychiatric department for competency to stand trial and that his case be transferred to the court's mental-health court docket. After Hicks was evaluated by the court's psychiatric department and a report was issued, the parties agreed to the findings and conclusions of Dr. Aronoff's evaluation of Hicks's competency wherein the trial court determined that Hicks was competent to stand trial in that he was aware of "the nature and objective of the legal proceedings against him and could assist in his own defense." Notably, Dr. Aronoff's report opined that

> [h]e's aware of his charges, the acts of constituting such, the relative seriousness[,] and the possible sentence he may receive if convicted of them. He's able to name various court personnel and describe their roles. He's aware of his available plea options as well as the concept of plea bargaining. He manifests an appreciation of the adversarial nature of the legal proceedings against him.
>
> Any mild deficits [Hicks] demonstrates with respect to his understanding [of] the nature and objective of the legal proceedings against him are easily rectified with explanation using basic

rudimentary terms. If this is exercised, [Hicks] demonstrates the capacity to comprehend as well as retain this information.

\*\*\*

[Hicks] reported he trusts his attorney. He's able to confer with him, consider any legal advice he may offer, and will work collaboratively with him in order to obtain the most favorable outcome of his court case.

[Hicks's] speech and thought process are coherent and relevant. Thus, he would be capable of providing his attorney with pertinent information as well as testifying and challenging prosecution witnesses. Although [Hicks] demonstrates some mild deficits in attention and concentration, these do not appear to rise at the level where they would adversely affect his ability to follow the court proceedings.

[Hicks] is motivated to receive a disposition most favorable to him. [Hicks] has demonstrated by his behavior during this evaluation that he would be capable of acting in an appropriate manner and tolerating the stress of trial. Although he became tearful at several points during the interview, he was quickly able to regain his composure.

(Tr. 5-7.)

{¶ 47} The transcript also shows that Hicks's trial counsel informed the court that he discussed all possible defenses available to Hicks and that Hicks understood them. Nothing in the record supports that Hicks did not understand the defenses available to him, including the defenses of not guilty by reason of insanity or a blackout or voluntariness defense. While Hicks also raises within this assigned error that his counsel was ineffective for failing to go over these available defenses, he provides no evidence of this.

{¶ 48} To establish ineffective assistance of counsel, Hicks must demonstrate that (1) counsel's performance was deficient and (2) the deficient

performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. "A licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance bears the burden of proof." *Ohio v. Redmond*, 8th Dist. Cuyahoga No. 111138, 2022-Ohio-3734, citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "[W]hen a defendant enters a guilty plea as part of a plea bargain, he waives all appealable errors that may have occurred at trial, unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea." *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5, citing *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991).

{¶ 49} The discussions Hicks had with his attorney are not a part of our record, and there is no evidence that trial counsel failed to inform Hicks of his potential insanity, blackout, or voluntariness defenses. Rather, the record reveals evidence to the contrary: Hicks's trial counsel informed the court that he "discussed with [Hicks] his constitutional rights, his trial rights, and the relative penalties as well as the defenses he may have at trial" and "believe[d] that [Hicks] [wa]s ready, willing, and able to enter a knowing, intelligent, and voluntary guilty plea."

Therefore, we cannot say trial counsel's performance was deficient under the first *Strickland* prong.

{¶ 50} Moreover, Hicks fails to demonstrate that he was deprived assistance of counsel. Speculation is insufficient to satisfy Hicks's burden of demonstrating prejudice, the second *Strickland* prong. *State v. Reed*, 8th Dist. Cuyahoga No. 110217, 2022-Ohio-1058, ¶ 19; *State v. Ziga*, 8th Dist. Cuyahoga No. 108336, 2020-Ohio-911, ¶ 36 ("To the extent that appellant is suggesting that had counsel requested an evaluation some exculpatory or mitigating information would have been uncovered, this argument is purely speculative and insufficient to satisfy his burden of demonstrating prejudice."). Thus, we find no support in the record for Hicks's contention that his counsel's deficiencies.

{¶ 51} Accordingly, we decline to find that the trial court erred when it denied Hicks's presentence motion to withdraw his plea, and Hicks's guilty plea must be vacated to correct a manifest injustice. Hicks's first assignment of error is overruled.

### C. Hicks's Sentence

{¶ 52} Hicks disputes his sentence in his third, fourth and fifth assignments of error arguing that it is contrary to law and/or unconstitutional.

{¶ 53} He claims that the trial court erred when it imposed a prison sentence that was contrary to law because the full term of the sentence was ordered as mandatory time. Hicks concedes that the parties agreed that the offenses would not

merge and there would be no early release. Hicks further concedes that he agreed to a recommended term of imprisonment.

{¶ 54} This court has recognized that a plea agreement is a contract between the state and a criminal defendant with explicit terms subject to contract-law principles. *State v. Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, ¶ 23 (8th Dist.), citing *State v. Butts*, 112 Ohio App.3d 683, 686, 679 N.E.2d 1170 (8th Dist.1996), and *State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 11. We explained that "when a sentence is agreed to by the parties as part of the negotiated plea, there is an implicit 'understanding that in exchange for the plea, the defendant and the state have agreed to be mutually bound to a specific sentence or a sentence authorized by law within a prescribed range.'" *Id.,* citing *State v. Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, ¶ 17. Therefore, we held that "'inherent in an agreed sentence is a quid pro quo arrangement where the defendant and prosecutor have either given up something or attained something in exchange for being bound by an appealable sentence.'" *Id.*, citing *Id.*

{¶ 55} Here, Hicks acknowledges that he agreed to plead guilty to involuntary manslaughter as amended in Count 2 with notice of prior conviction and repeat violent offender specifications. Hicks claims that while the prison time imposed in Count 2 was mandatory under the notice of prior conviction specification, neither Count 4, child endangering, or Count 5, felonious assault, required mandatory time because the notice of prior conviction and repeat violent offender specifications were deleted from those counts. Hicks maintains that four-

year consecutive prison sentence in Count 4 should not have been deemed to be mandatory and, therefore, was contrary to law. Despite agreeing to a recommended sentencing range without early or judicial release, he claims the mandatory sentence imposed is contrary to law.

{¶ 56} The state asserts that the terms of Hicks's plea agreement expressly stated that he was ineligible for early release, making his entire sentence mandatory. The state claims that when the mandatory nature of the agreed-upon sentence is an express condition of the plea agreement, it becomes a binding contractual term.

{¶ 57} We agree with the state and find this case analogous to *Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, wherein the defendant pled guilty to offenses that did not carry mandatory time but agreed to a sentence of 15 years in prison "to be served in totality." We find the plea agreement, which included an agreed-upon sentencing range of 15 to 18 years "with no early release," constituted a valid and enforceable contract that mutually bound the parties to its terms. Additionally, we agree with Hicks's concession that the use of the word "mandatory" as opposed to "no early release" is a "distinction without consequence." Therefore, regardless of the trial court's use of the word "mandatory" any error in terminology is harmless.

{¶ 58} Hicks also argues that the imposed prison sentence was contrary to law because the trial court's sentencing journal entry ordered a prison term of 12-16 years on Count 2.

{¶ 59} Crim.R. 36 provides, "Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may

be corrected by the court at any time." "A trial court may use a nunc pro tunc entry to correct mistakes in judgments, orders, and other parts of the record so the record speaks the truth." *State v. Sandidge*, 8th Dist. Cuyahoga No. 109277, 2020-Ohio-1629, ¶ 7.

{¶ 60} Hicks claims that the trial court's journal entry improperly ordered a minimum sentence of eight years and a maximum sentence of 16 years for a total aggregate of 12-16 years on Count 2. Hicks claims that Count 2, involuntary manslaughter, a felony of the first degree, has a maximum sentence of 11 years according to R.C. 2929.14(A). Hicks maintains that the trial court did not err in calculating the total number of years in his sentence but made a clerical error by imposing them entirely on Count 2, which is contrary to law. Hicks indicates that this clerical error may be remedied through a nunc pro tunc entry. The state agrees with Hicks and asserts that the matter should be remanded to the trial court.

{¶ 61} We agree with Hicks and the state. At Hicks's sentencing hearing, the trial court imposed an eight-year sentence on Count 2, with an additional four years under the Reagan Tokes Law. Thus, the sentence imposed on Count 2 was 8 to 12 years, which was to run consecutively to the four-year sentence imposed on Count 4. Our review of the record reveals that the trial court's sentencing entries incorrectly ordered "the minimum possible sentence of 8 years and a maximum possible sentence up to 16 years for a total aggregate of 12 to 16 years entirely on Count 2." (Journal entry, August 3, 2022, and Nunc Pro Tunc entry, August 8, 2022.) Because the entries do not reflect the sentence imposed at the sentencing

hearing, we find that correcting this clerical error through a nunc pro tunc entry is an appropriate remedy that will modify the record so that it speaks the truth.

{¶ 62} Accordingly, we sustain in part Hicks's third assignment of error on this basis and remand the matter to the trial court so that it may issue a nunc pro tunc entry indicating an indefinite prison sentence was imposed on Count 2, with a minimum possible sentence of eight years and a maximum possible sentence up to 12 years, for a total aggregate prison sentence on all counts of 12-16 years.

{¶ 63} In the fourth assignment of error, Hicks challenges the constitutionality of the Reagan Tokes Law arguing it violates his rights to due process and equal protection, the separation-of-powers-doctrine, and his Sixth Amendment right to a jury trial. Hicks further argues that the Reagan Tokes Law is void for vagueness and confers too much authority to the Department of Rehabilitation and Corrections ("DRC"). Hicks acknowledges that "[t]he ultimate consideration of the constitutionality of the Reagan Tokes sentencing scheme will be determined by the Ohio Supreme Court[, which is] currently considering the matter in *State v. Hacker* * * * and *State v. Simmons* * * *."

{¶ 64} Since the filing of Hicks's brief, the Ohio Supreme Court affirmed the judgment of this court in *State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728 (8th Dist.), and upheld the constitutionality of the Reagan Tokes Law on numerous grounds. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 1. In *Hacker*, the Ohio Supreme Court held that the Reagan Tokes Law does not violate a defendant's right to due process because it is not void for vagueness or facially unconstitutional.

*Id.* at ¶ 40. The *Hacker* Court further held that Reagan Tokes Law does not violate the separation-of-powers doctrine because "allowing the DRC to rebut the presumption of release for disciplinary reasons does not exceed the power given to the executive branch and does not interfere with the trial court's discretion when sentencing an offender." *Id.* at ¶ 25. Finally, the Ohio Supreme Court held that the Reagan Tokes Law does not implicate a defendant's right to a jury trial because the range of penalties prescribed by the legislature and imposed by the trial court will not be changed by any determination made by the DRC regarding the defendant's behavior while in prison. *Id.* at ¶ 28.

{¶ 65} Because the constitutionality of the Reagan Tokes Law has been upheld on the grounds challenged by Hicks, we overrule his fourth assignment of error.

{¶ 66} In his fifth assignment of error, Hicks argues that his sentence is contrary to law because the trial court failed to provide required notices when it imposed his sentence. Hicks maintains that because the trial court failed to comply with R.C. 2929.19(B)(2)(c), his indefinite sentence in Count 2, which was imposed pursuant to the Reagan Tokes Law, must be vacated.

{¶ 67} When a trial court imposes a nonlife felony-indefinite sentence pursuant to the Reagan Tokes Law, R.C. 2929.19(B)(2)(c) requires that the trial court notify the offender of the following:

> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive

earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

While the court must give these notices at the time of sentencing, no specific language is required. *State v. Gates*, 8th Dist. Cuyahoga No. 110616, 2022-Ohio-1666, ¶ 25.

{¶ 68} On appeal, Hicks claims that he was not given any advisements required under R.C. 2929.19(B)(2)(c). Specifically, Hicks states that he was not given requisite notice regarding the following matters: (1) the presumption that he would be released upon the completion of the minimum sanction; (2) the DRC's ability to rebut that presumption; 3) the conduct or other considerations taken into

account by the DRC that may cause the presumption to be rebutted; (4) the hearing conducted by the DRC, the details about how that hearing is held, and the findings and implications that may result; and (5) the possibility that his prison sentence could be extended more than once until he served the entire maximum prison term imposed under the Reagan Tokes sentence. The state agrees that the trial court did not provide the required R.C. 2929.19(B)(2)(c) notifications when it imposed Hicks's sentence on Count 2.

{¶ 69} Our review of the sentencing transcript reveals that the trial court imposed a nonlife, indefinite prison sentence of 8 to 12 years on Count 2, involuntary manslaughter, a first-degree felony. However, the trial court did not impart the information contained in R.C. 2929.19(B)(2)(c) at the time of sentencing. Thus, we agree that the trial court did not provide all of the required notices pursuant to R.C. 2929.19(B)(2)(c) and now consider the appropriate remedy.

{¶ 70} Hicks argues that because his Reagan Tokes sentence was contrary to law, it must be vacated. Hicks claims that this court's remedy in *Gates* was erroneous because an improperly imposed sentence against statutory authority is voidable and a voidable sentence must be vacated in a successful challenge on direct appeal. Hicks cites *State v. Harper,* 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, in support of his argument. The state relies on *Gates,* as well as authority from other appellate districts, and claims that Hicks's sentence should be reversed and remanded for the sole purpose of providing the required notifications set forth in R.C. 2929.19(B)(2)(c).

**{¶ 71}** We agree with the state and find *Harper,* a case involving sentencing errors in the imposition of PRC sanctions, inapplicable. In instances where the trial court has failed to fully notify the defendant of the R.C. 2929.19(B)(2)(c) advisements, this court has consistently remanded for resentencing. *See Sullivan*, 8th Dist. Cuyahoga Nos. 111621 and 111917, 2023-Ohio-1036, at ¶ 26; *State v. Bradley*, 8th Dist. Cuyahoga No. 110882, 2022-Ohio-2954, ¶ 13; *Gates*, 8th Dist. Cuyahoga No. 110616, 2022-Ohio-1666, at ¶ 27; *State v. Whitehead*, 8th Dist. Cuyahoga No. 109599, 2021-Ohio-847, ¶ 46 (where the trial court failed to inform the defendant of any of the required notifications set forth in R.C. 2929.19(B)(2)(c)). Accordingly, we sustain Hicks's fifth assignment of error and remand the matter for resentencing.

**{¶ 72}** Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR